Case No. 16-121028 at L. Browning-Ferris Industries of California, Inc. doing business at BFI New Valley Island Recycling Petitioner v. National Labor Relations Board. Mr. Deidelberg for the petitioner, Mr. Heller for the respondent, Mr. Becker for the intervener. Good morning. Good morning and may it please the court. My name is Joshua Deidelberg appearing for Browning-Ferris. I'd like to reserve two minutes of my time. The board says that its new joint employment test follows the common law and task heartily, but it does not. And I'd like to address three key areas where the board's common law approach is flawed. Now, as a threshold matter, whereas here the board is arguing for a new common law formulation, its test is not entitled to the deference of this court on that issue. Its test has to comport with the consensus of the judicially crafted common law and Congress's intent. So first, the board's new test, as the dissent pointed out... Can I ask one question for clarification? Yes. Does that mean the state of the common law at the time of the Taft-Hartley Act or does it continue to evolve? Well, in this case, Your Honor, Congress had a definite vision of the common law when it passed Taft-Hartley 70 years ago. In fact, in the legislative history that we've cited, it took issue with the board essentially floating new meanings that didn't exist. No, I get that. That was because they thought it was divorced from common law analysis. But my question is more narrow than that, and that is, do we mean we freeze common law in time at the year of the Taft-Hartley Act or when Congress said, no, common law is in control here. This isn't something that you have expertise in. We're going to meet. We just need common law definition, and that common law definition isn't frozen in time. Well, I believe it is frozen in time. And indeed, even the board is not looking to apply the restatement third of agency or the restatement of employment law. Their test is premised on the restatement second of agency. They take a historical approach. Is that how it works under all the other statutes that look to common law of agency for definition of an employee, employment, those types of things? Has any court ever held that it's frozen in time? Well, you have a unique history here because you have a situation where in Taft-Hartley, the Congress took the unusual approach of excoriating the board. But it didn't say anything there about the common law can't move after this year. Well, again, I would point to that legislative history and the notion that they were, you know, they were very concerned with the board having a frozen definition. I get that, but that's a different problem, right? They weren't concerned with the common law evolving. They were concerned with the board having departed from the common law and put policy factors in as part of its decision-making, right? Well, I do think that they were concerned about overturning a particular concept of the common law, you know, or lack of common law that the Supreme Court had. And so you have language that's in the statute that says common law is frozen? There's no explicit language in that regard. The Taft-Hartley amendments, I'm sorry. No, you go ahead. Were in 1947, right? Yes, Your Honor. Wasn't the restatement second of agency approved in 1958? Yeah, it was actually the restatement first was in effect then, but there's really no difference in the text between the two restatements. So, really, we have to go back to the restatement first? We can't even look at the restatement second? Well, there's no substantive difference. Just to be safe, though? Yes. But certainly not the restatement of employment law, you know, which is not a restatement of the common law, but essentially an attempt to. Well, it's a restatement of state common law. It absolutely is. It says in the restatement of employment law itself, we're restating state common law of employment. Well, you know, but it's also stretching across a variety of federal statutes, for example, that have different histories and different purposes. Yes, but it says we're restating that we have practiced you trying to restate statutory law. We are restating common law. That's what it says. Okay. The first area where the board's test was problematic is that, as the dissent pointed out, it's possible to have a joint employer finding without the need for a pervasive amount of direct and immediate control over the employment details of particular workers. And the center of gravity in the common law and in this court's approach, and I believe reflecting the intent of Congress, is active control. The actual case, the Third Circuit Browning-Ferris case, which the board says that it's relying upon and wants to get back to the actual holding of that case, is that the putative joint employer exerted control. And the findings were that the putative employer exerted control, I believe it's at 1124. That's the actual holding of the case. And that notion of exertion of control dovetails, again, with Congress's understanding of the essence of a common law employment relationship as direct supervision of the meta-inquiry of this court. Well, on page 1120 of Browning-Ferris, it talked about BFI notes that the hours of operation of the transfer site were set by the city. It can only be changed by the city. And what the Third Circuit said is BFI continues to have the authority to set the shifts. So doesn't that mean that they were following the text of the restatement, second, and looking at both authority that's unexercised and actual exercise authority? That's what it says they're doing right there. I believe when the court describes its holding, it describes it in terms of the fact that Browning-Ferris was exerting control. Well, I can't possibly, because part of the evidence, it can't be exclusively that. It's not exclusively that. Okay, so it was looking at both things. As I said, it's looking at both things, but the center of gravity is active control. And I think when the court described its control jurisprudence, for example, in FedEx 1, it noted that the most significant factor, the most important factor is active control. So what do you mean by center of gravity or most important factor? Does that mean that you're not disputing that they can, when they put all the factors out on the table and all the evidence on the table, they can include consideration of authority that they have, but it's an exercise. Do you dispute that they can include consideration of that? Well, you know, basically, you know, the board is not arguing for a mechanical application, for example, of the 220 factors. Basically what it has is three buckets, direct control, indirect control, and potential control, a right to control. We would argue, and I would speak to this, that the indirect control bucket hasn't even been found to be a factor. There's no judicial consensus at all in terms of. Let me just focus for now. We'll take these one piece at a time. Let's just focus on the reserved authority or have the authority, unexercised authority. So if you've got two buckets, direct authority, which I assume when you say direct, you mean direct. It means direct versus immediate. Right. And the authority to unexercised authority. As to those, I just have a narrow question, because I noticed you were saying center of gravity. So I take it you agree that they can consider, when they lay everything out, they can certainly consider as a relevant factor unexercised authority, as they did in Brown v. Ferris. They can consider it, but the focus of this court, for example, you know, is to discount the right of control or to give it no weight in relation to the party's actual practice. I wonder, as far as the potential, the right to control, are there any other, I see three areas where that was true with respect to the employment relationship here. One was the contract provided that an employee of the whatever, was it lead? Lead point, Your Honor. Lead point, that could only work six months. Yes. And Brown v. never enforced it. That's right. Two, that it could refuse to allow any particular employee of lead point to work on the premises, but it never exercised it. Correct. And third, it capped the wages so that the wages of lead point employees were not higher than the FIs. And that was ultimately illusory, Your Honor. Yes. Is there any other area where there was potential right to control but not exercised? Well, I think there was a discussion of sort of setting pre-performance qualifications, for example, for the contract as agents. Discussion? Was that part of the contract? It was part of the contract, but it was also never enforced. Well, the six-month business, I guess it's a right to control, but it seems to me that that reflects more in favor of your position than not. It shows an intention on the parties that we're not going to have a bunch of permanent employees here on the premises, whether you enforced it or not. I mean, it seems to me a point in favor of your position. That's right. Ultimately, the court's control jurisprudence has been getting to what is the actual relationship to the parties? What is their actual practice? What's actually going on here? You know, in contracts, there's often, as you know, a lot of protective language, a lot of rainy day, worst-case scenario language that never gets enforced, that's never intended to be enforced except in the most extreme circumstances. Can I clarify what you mean by not enforced in the sense of was it not enforced in that the record shows that, in fact, people stayed more than six months, salaries went higher, people were getting paid more than the one Bryan Ferris employee that was on the line, or not enforced in that lead point just, you know, colored within the lines and so it never became an issue in that Bryan Ferris never had to say, it's bad, don't do that, which is it? Well, it's, you know, it's really, you know, more the first in the sense that, you know, I mean, it was never an issue between the parties. It never... Did they pay a wage to the lead point, pay a wage to its employees that was higher than the one Bryan Ferris employee? It did not, but the record said that they never sought to do so. Well, but why would you seek to do so when the contract says... I'm just trying to figure out whether that counts as an exercise because it was having exactly the effect it's meant to. If I have a contract that says I can't do something, why would I try to do it? Well, in this particular case... That means that contract... I mean, it was really illusory. It was never going to be a consideration. What does that mean? They just were never going to pay the people that much? Yeah, I mean, in the facts of this case, $5 an hour was much higher than, you know, any of what the lead point employees were getting. It was just never an economic consideration for the contract. I wanted to follow up on the right to control thing. Sure. So you named... I named three. You had one pre-approval training or qualification. But it seems to me there's another, and again, not necessarily against your position, and that is that, as I understand it, this contract was terminable at will. Yes. Isn't that a... but they never terminate it. Isn't that a right to control? I mean, that's saying that every employee at the lead point will lose his job. Yeah. But the fact that it's terminable at will seems to me to cut in your favor. Well, potentially so. As far as the relationship is concerned. Yes, and it's also, you know, one of the problems with the board's indirect and reserve control approach, which is it's basically conflating economic dependence and economic influence in a business relationship with control over the employees themselves. Were they going to lose their jobs or were they just going to not work on the lead point or on the Browning-Ferris contract? They were not going to work on the Browning-Ferris contract. In fact, you know, there's nothing in the contract that says that they have to lose employment with lead point generally. Right. So, just so that I'm clear, what are you arguing is our standard of review of the test itself? Are you saying it's de novo? It's de novo, Your Honor, because it's a pure law question under the common law. The board is arguing for a new formulation. What do you do with the cases talking about fairly conflicting views? How do you read those? Right. As the court held last week, that really goes to the application of a lot of facts and not when the board is arguing for a new formulation. And what about the Corporate Express case where the board, this was an independent contractor case, and the board had traditionally defined the common law factors and said, you know, the main thing is control. But then in Corporate Express they said, we're actually going to change the emphasis here and we're going to look at entrepreneurial opportunity. So, we'll march through the factors, but we're really changing what it is we're looking for under the common law. And this court said that decision by the board was reasonable. I mean, I think that's a de facto change in their standard. I mean, they have overturned 30 years of precedent. I'm sorry. You're talking about Corporate Express or this case? This case, sure. No, I just wanted to know on standard of review, what do we do about the fact that when you have the board continuing to apply the common law factors, they are going to apply the common law, but I'm going to emphasize these particular factors. And we didn't say de novo. We said it was upheld because it was, quote, reasonable, which sounds like a Chevron review. What do we do with that case? I get you that it's not crystal clear in our precedent, but I'm not sure what you do with that case. Sure. I mean, ultimately the touchstone, you know, is the common law, and ultimately, you know, this court as a common law court, you know, is going to have to determine whether, you know, the test or the application of the formulation is ultimately consistent with the common law. And the issue in this case is that ultimately what the board is doing is not. There's no judicial consensus for its indirect control theory. They cite a single 1962 Fourth Circuit case, which is actually a single employer case. This court has never held that indirect control as they conceive of it is even a factor under the analog. One of the problems of using the restatement of agency, and so I guess the main provision is 226, right? Is that right? 220, 227, 5. Yeah, right. Is that really dealing with mainly dealing with liability and tort cases as opposed to the employment relationship that we have here? And so I, you know, who knows what the common law is on joint employers. There's not much. There's one little, what is it, sub J in 227 that mentions it. I mean, there's really almost nothing. I mean, you know, the restatement obviously was not codified into the act. And if it were, you know, sort of the end of the analysis, then we probably wouldn't be here because there's no real discussion of joint employer relationships as such under the restatement. Considerations for holding one company liable when you have two companies involved in a tort case are rather different than the considerations in the labor relations field. I mean, you're talking about deep pockets and trying, you know, employers may try to evade financial responsibility for unsafe working conditions and all the rest of those things, which is not really directly on point with the employment relationship. Yes. Well, I agree. I mean, if one were to look at the restatement, I mean, there is, I'm sure you saw an example that's based on the Greyhound case. And I think it's notable that the comments there focus on the active control, the active supervision of the customer, of the client. So are you saying that we shouldn't be looking at the restatement of agency? We should be looking at the restatement of employment law, which your amicus, the Chamber of Commerce, says we should do for the reasons that Randolph articulated. The agency's law just doesn't fit the situation. Is that your position? It's not our position, but, you know, since... So notwithstanding the odd fit for tort liability and defining joint employer, you're saying we need to look at... I mean, I think, ultimately, one is looking at control factors. That is, you know, the focus. And we've argued that there needs to be a historical application. I'm simply arguing the alternative. If the court is so inclined, you know, for whatever reason, to look at the restatement of employment, I think the Greyhound example favors our position. Can I ask... What does... I guess I have two questions. One is you keep going to the indirect control when you say there's no judicial authority for that. But I take it you're recognizing that there's both repeated tax summary statement of agency and case law that addresses reserve control, unexercised control as a factor. And it's in Brown and Ferris itself in the Third Circuit. Yes, there is. But that doesn't have... You think that's an... Well, this... I think direct control has some arguments as to reserve authority. I would break down the three buckets this way, very simply. You know, the focus of the analysis is ultimately on the party's actual practice and not this kind of protective language. You know, so that's why I say that the center of gravity, you know, and in this court's control jurisprudence has been on active control. Reserve control has been recognized as a factor. But if you look at cases such as Local 777 or Herbert Harvey where the court has weighed active versus reserve control, its turn has always been to the party's actual practice. It wants to know how in reality, how in practice have the parties ordered their relationship? What are they really doing vis-a-vis each other? And with respect to indirect control, there's no judicial consensus for that. In fact, in Aurora Packing, this... Oh, wait. Just to stay back on the... Yes. The reserve control issue, if you had... Let's just pretend there's no indirect control bucket for purposes of answering these. I get that you've got arguments about that. Sure. As to the reserve control, if... Because before you said, yeah, they can consider it, but it can't have any legal determinative force, which there's not much point in considering something. If you sort of had a situation where the facts were 50-50, none of these things look like direct control, but some of these things do not, could reserve control make a difference? I don't believe so. I mean, I think ultimately... So it can't have... What's the point of considering something that can have no legal impact? I mean, you know, I mean, it's part of, you know, the mise-en-scene. It's not the part of it that can't count for anything. You can talk about it, I guess, because you have a right to say whatever you want to say, but it has no legal impact, so why consider it? It can't make a difference. You know, it's a factor, you know, but it's not a heavily weighted factor. In what area of law do we have a factor that can't make a difference and have no impact at all? You know, again, I go back to, you know, I mean, the underscoring of active control. Underscoring just may mean that that gets counted twice or something, but it doesn't mean that the one doesn't get counted at all and couldn't make a difference. You know, I just have to point out this court's cases. There's got to be a timing question here, too, to just follow up. If the contract has only been in existence when the unfair labor practice charges get filed and go through the board, if the contract has only been in existence for a month, then it may be that everything you're talking about is potential to control because there hasn't been a long history of exercising the contract and the terms and conditions of the particular joint agreement. Yeah. So, you know, I think there's got to be a timing factor built into this, too. Well, you know, potentially so. You know, again, you know, where you have months and years of experience, you know, where you can look at a pattern of pervasive control or the lack of it. You know, then I think that's what you look to. I mean, we talk about the common law of joint employers, but there's also a common law of the factory or the particular plant that grows up after a period of time where things are done in a certain way, even though they're not particularly spelled out, but that takes some time to develop the grievance procedures and resolving things and so on and so forth. Right. Contracts are entry points, and you need to see over, in the fullness of time, how they're actually enforced or not enforced. So does that mean if the representation petition is filed in the first two months of a contract like this, you could have one answer? If it's filed after two years, you could have a different answer? Exact same contract? Well, you know, again, I think it may be unfortunate timing for the union. It could be different. I'm sorry? It could be different based on that timing? Well, I mean, you're going to have more evidence, obviously, of active control or lack of active control over a longer period of time. So with that, if you don't have that evidence, then reserved authority counts for more. We don't have a lot of time yet. You know, would it count for more? Because we don't really know. Just as Judge Randolph said. Yes. And you agreed, I thought. You know, in that hypothetical, which is not this case, where you don't have a body of active control, I think more so. I'm just trying to test the board's – I understand. They have a decision here that you're challenging, a rule of law that you're challenging, and you were challenging buckets, and one of those buckets was reserved authority. And so I'm just trying to clarify, in response to Judge Randolph, that's a very fair point, but as a factual matter, everything's reserved for the first week, right? Yes. And so the difficulty with that is it sounds like when they – how fast can they file a petition to get a different answer? I mean, I would say – It's not as sensible as it is. I mean, I would say in that circumstance, I mean, there's simply no sufficient quantum of active control that's been exercised. You know, we don't know what the relationship between the parties actually is in practice, and in the absence of that evidence of active control, we can't find a joint employment relationship. Now you'd want to talk about indirect control, and I just have a question. Sure. Do you – what does indirect control mean? Do you understand what – not in your own opinion, from the board's decision, do you – is it, well, I tell my clerk to tell you something, and is that indirect control or – You know, I think it actually means a few things in the way that they express in their opinion, and let me see if I can break those down. So, you know, where the board is talking about control that is essentially based on the putative employer's or the customer's ability to potentially control or change its operations, you know, that is one aspect of indirect control that they've identified. And in Aurora Packing – But would that be different from the reserved authority? I'm just trying to really understand. That sounds like that overlaps with reserved authority. Well, you know, that's talking more, for example, with respect to, you know, the work streams. You know, I mean, the – you know, Brown and Ferris has a certain business. You know, they are open certain hours of the day for various, you know, business and entrepreneurial reasons. And, you know, that's the essence of their operation. In Aurora Packing, this court held that those kinds of considerations aren't even control at all. If you're going to force the customer to, you know, reconstitute its business or fundamentally change its business, that can't be control. So that's one aspect of the indirect control bucket. The second is where the board impermissibly conflates economic influence over the contractor with control over the contractor's employees. And it shows up in places like where the board stresses the at-will nature of the contract. You know, essentially, it's an economic dependence or influence message that if you don't do what we say, we're going to cancel our contract. It's not control over the employees. It's economic influence being exercised as against the contractor itself or in other areas where the customer, you know, Browning Ferris is making requests or is stating preferences. You know, where the board claims that a certain outcome is preordained. But remember that the premise of the joint employer relationship is that you have two independent businesses that are each capable of exercising their own discretion.  Well, you know, you're going to, you know, knuckle under for economic influence or economic dependence reasons. You know, I mean, that could be potentially a factor in some other statute. But under the economic realities analysis that the board is forbidden to apply under the NLRA, it's improper. You know, that's why the EEOC's brief was so mystifying and telling to say that they're the same test because they can't be the same test. You know, there is this separate history under the NLRA that does not exist under Title VII, the FOSA, and so forth. Do you mean by that that it's a different common law definition of employee employment under Title VII than it is under the NLRA? Because they both say they look to the common law. Well, they both look to the common law, but one of the issues with, you know, sort of the development of the test, you know, and even this court sort of has two parallel tests, is that the FLSA test, the Title VII test, has been infused with. Title VII doesn't have the same definition as the FLSA. So we can take that off the table. Okay. So Title VII looks to the common law. NLRA looks to the common law. That's what the meaning of the test partly was, look to the common law. So is your position that a common law of joint employer could mean one thing for Title VII and something different for the NLRA? Or does it have to be the same? Which of those, different or same? With respect to the pure common law, presumably the same. But, you know, again, in Title VII jurisprudence and FLSA jurisprudence, there's this whole overlay of business reality or economic – Where's that in the Title VII case? Where in the Title VII case? The Title VII case. So we don't – when we say – we mean common law with a wink. Common – well, I mean, you know, it's looking to ultimate purposes, it's looking to economic realities. What case says you can go start with the common law but feel free under Title VII to overlay economic realities? You know, if overlay is the wrong term, you know, in El Safi, for example, there's a discussion of, you know, one test, which is sort of the pure Browning-Ferris common law test, and then the other test, I think Spirides was the case, in which it's sort of common law plus consideration of economic realities. El Safi said we don't need to resolve that here. We're going with Browning-Ferris common law. And it wasn't even a close issue there. It wouldn't make a difference which test was applied. But that's not – we didn't hold there that for purposes of Title VII, when it says common law, that that's a common law plus meaning. I thought Supreme Court been pretty clear it's common law for Title VII. So it has to be – I mean, whatever meaning of joint employer there is under the NLRA is going to have to govern Title VII, Americans with Disabilities Act, FELA, not FLSA. Maybe not. That's a little different. But it's all those – we're going to have one rule here. You know, except as we've argued that there's a historical grounding, you know. Historical grounding just said go look at the common law. I don't see how that historical grounding said it's going to be different common law. Because we can't do the frozen in time. If it is, if we do frozen in time, we can't even look at the restatement seconds. So it can't be a different common law. That's a pure question of law. It's going to have one meaning on Monday and the same meaning on Tuesday in the Title VII case, right? You know, but in this particular legislative history, you know, Congress is saying, you know, again, don't tell us what, you know, the meanings – you know, give us the meanings at the time the Wagner Act was enacted. You know, don't change the meanings. So we can't look at restatement seconds even though that's what you briefed us. You know, we took their control arguments head on. There's no real substantive difference between the first and the second restatement. This is a common feature of historical analysis. The history doesn't change, but the interpretation of the history can evolve over time. Even though the events are in the past and over and nobody questions it. And so, you know, one way of looking at this is that the cases, particularly in this circuit and the Supreme Court case, and particularly Talley, I think, which you highlight, is an evolving understanding of what the common law was at the time that Taft-Hartley was enacted. Yeah, I mean, I would say this. I mean, in Taft-Hartley, Congress took, again, the unusual act of seeking to overcome a Supreme Court decision. That's not unusual. Maybe more common these days. I don't know if these days. Professor Eskridge has an article in the Georgetown Law Journal years back of hundreds of cases where Congress has done it. But we have in hearse a case study of what Congress did not want to constitute an employment relationship, and that included, you know, findings of broad contours of work, control over broad contours, as opposed to the minutiae of daily activities, which was significant. You know, I think the – so, I'm sorry, actually, just circling back to your original question, Your Honor, in terms of the indirect control bucket. So we have, you know, the Aurora Packing aspect of it, which, you know, this Court has said is not even control. You're talking about having to fundamentally change relationships. Just to be clear, I thought you said there were three things. Am I wrong that those are done that are indirect control? I thought you've only given us two. Well, I was talking – I'm sorry. I was talking about the buckets. I mean, skipping ahead, the third is that in not giving effect to the limited and routine control aspects of control. You know, the Court is – I'm sorry. The Board is not recognizing that there are certain aspects of control, even direct control, which this Court and other courts have found are not probative with respect – you know, and, in fact, are fully consistent with contractor relationships. And they're in a range of this Court's cases, like North American ban lines and so forth, talking about, you know, monitoring or evaluating worker performance or ends, customer demands, satisfying statutory obligations, and the like. What do you think that language meant? That was hard for me to – you know, there's double negative in the sentence, and what exactly do you think that they meant there with that particular sentence? About? I'm sorry. Let me see if I can find exactly how they said it. But they're – of course, I can't find it because I want to now. The – I guess, what is it that you think that they meant by this? It has to not be more than – they were no longer saying that it has to not be more than limited and routine. I think that's the way it is. Well, I mean, what do you think that we really – we will no longer require that a joint employer exercise authority not in a limited and routine manner. Yeah, I think it's on page 14. Right. Or JA 382. Matter does require that control, when it is exercised, must be exercised directly and immediately and not in a limited and routine manner. Yeah. Yes. There are various forms of control, even forms of direct control, which this court and this court have found are nonetheless consistent with a contractor relationship. In those principles that I was referring to that are in a number of the court's cases, such as North American Van Lines, and we've referenced them in our brief. Specifically, with respect to limited and routine control, what the board has often described that as is, you know, the what, where, and when of performance. And remember, these are ultimately customer relationships. And if a customer can't, you know, control the basic what, where, and when of the performance it seeks, it's hard to see where there could be any contractor relationships yet, but less. And if you combine that with what I think is one of the key sentences in the board's analysis on 382, where it talks about, you know, where it is honing in on its vision of joint employment, you know, and says where one party owns and controls the premises, where it controls the broad contours of work, where it dictates the essential nature of the work and provides guidance to the other party, which actually exercises the day-to-day directed immediate control, that that forms a joint employer relationship. But that's actually a classic contractor relationship. The only thing in the supplier firm pursuant to the user's guidance makes specific personnel decisions and administers job performance on a day-to-day basis. So, you know, the working word there is pursuant to the user's guidance. I assume if, and I know it's not this case, so if Company X, we won't call it Browning Ferris, had all this going on, ordinary contracts, but then the contract said we reserve the right to have input on the operations and then was, as it turned out, going, sitting up there in its window, supervising the floor and said that person's not efficient enough and didn't say it to that person, said it to lead point, and said that person is not efficient, they're slow, they're slowing down the line, you've got to move that person off. And then the next day it said, that person, they're not concentrating enough, you've got to move them off. And I think you've got too many, and the next day it said on this, you've got too many people on this line, not enough over there, you've got to move them over there. All of this is to lead point, not to the employees. Pursuant to this contract provision that says we get to have input, would that be indirect control and would that be relevant, something they could consider in deciding whether or not the company X is a joint employer? It's not cognizable as control under the NLRA, given the prohibition against considering economic realities. Wait, does economic realities mean I can't look at what company X is actually doing on a day-to-day basis to control the people working in its workplace? It's monitoring ends, it's monitoring worker performance. The examples I gave to you, they can't be considered. On Thursday they said, fire that person. On Friday they said, the cost plus thing is getting a bit pricey, let's lower everybody's wages. All to lead point pursuant to are we get to have input. You're going to tell me that that is forbidden to be considered under the common law? It is not control, it is guidance, it is monitoring. That's your position? Okay. That is our position. All right, we'll give you some time. Thank you. Good morning, may it please the Court. Joel Heller for the National Labor Relations Board. The Board's joint employer doctrine ensures that control over employees in the workplace carries with it responsibilities to them under the Act. In this case, the Board acted to place that doctrine on a stronger analytical footing to clean up its precedent in the area and to exercise its responsibility to ensure the continued vitality of the Act's protections. Specifically, it did two things. One, it reaffirmed that the standard for a joint employer relationship is whether two entities share or determine those matters governing the essential terms and conditions of employment. And second, it made clear what type of evidence it would consider in making that determination, direct and indirect control and a reserved right to control over terms and conditions and the means and the manner of worker performance. Can you tell me what indirect control means? Sure. If you look at what the Board was talking about when it said indirect control, the first example is, I think, what was just being discussed at the end of the previous exchange, and that is using Browning-Ferris, using the lead point supervisors as intermediaries. And look at page 2 of the Board's decision, JA370, where it says, control exercise indirectly, such as through an intermediary, may establish joint employer status. And there's evidence of that happening in this case. Browning-Ferris supervisors and lead point supervisors were in frequent communications, both in the pre-shift meetings and while work was going on, where they would tell lead point supervisors things like, we need to move these employees to that line because they're not our productivity standards, which Browning-Ferris said was not being met. So if I'm the hotel owner and I have, say, 40 employees, I'm not covered by the National Labor Relations Act, right, because there has to be 50? Is that the minimum? Okay. I haven't looked at that in a while. But anyway, so I hire a lawn service people to come out, and there's 10, 15 people. And one guy is cutting the grass too low, and I go to the supervisor and say, hey, listen, tell that guy to raise the mower up. It's too low. And another guy is putting mulch on top of my flowers around the bed. And I say, hey, tell that guy, you know, stop that. You're going to kill the flowers, and so on and so forth. And that happens day to day with the landscaping services. Does that mean that now, as the hotel owner number one, because they have 15 employees uncovered by the National Labor Relations Act as a joint employer, and number two, that in fact I have become a joint employer? So the jurisdictional question, that is not something presented by this case, whether you can combine the two in order to create jurisdiction. It must be common throughout the United States, where you have two employers, each of which has less than 50 people. But go on. Sure. So using the other employer as an intermediary, I think if you have to look at what they are communicating, what are they using the intermediary for? If they're communicating directives to the employees about how to perform their jobs, like we have here, that is evidence of a joint employer relationship. You don't automatically become a joint employer. The board is still going to weigh the evidence. What the board did in this case was state that it's not going to per se exclude certain categories of evidence from the analysis at all. It's on the table, and the board is going to look at it, the indirect control like we had here. The other example of indirect control that we have in this case is where Brown and Ferris, for example, set out the shift times. They set when the lines will operate, when employees take breaks, and when a certain line will run into overtime. LeadPoint then comes in and assigns specific employees to those various shifts. So we have both Brown and Ferris and LeadPoint contributing to work hours. Why do you call that indirect? Isn't that direct? Because Brown and Ferris is not saying, Joe, you're going to work at 8 o'clock tomorrow. They're saying, here is when employees will work, and LeadPoint is the one who says, Joe, you are going to work tomorrow. So you could call it co-determining hours. I think it is also a form of indirect control because it's not Brown and Ferris setting the specific guidelines itself. And that is a similar situation in the Third Circuit's Brown and Ferris case, they had a similar situation where the one employer set the shift and the other employer assigned a particular individual to work that shift. What is that relationship of joint employers? If I have a restaurant and I have a lot of waiters and I need every two nights or whatever, I need an exterminator to come in with his crew. I'm not going to that restaurant. And I say, I don't want you in there when we're open. The only time you can come in and perform that service on our premises is after we close. Is that evidence of joint employment? Well, the different situation there is that these employees in the bargaining unit are doing the core work of Brown and Ferris. They are recyclers. It's not that they're bringing in someone to do niche work or some kind of specialized work. Where did the board say the core work of the business is what we're limiting our decision to the core work? Did it say that? The board didn't talk about that because that's in this case here. So that's not actually a limitation on their test? It's not one of the multi-pronged factors. So, no, the board did not expressly say that that is going to make a difference. It's, again, not presented by this case. So it's possible the board could say that's going to be a limitation, but it had no occasion to do so here. The other point, the council, as I pointed out, is when describing indirect, they said that this is all about influence, economic influence over the other lead point. But the board expressly said that it is not considering influence. It says on JA381, sufficient influence is not enough, however, if it does not amount to control. So it is making that distinction between influence over the workplace and control over the employee's terms and conditions and their work performance. Well, when they say sufficient influence unless it amounts to control, do they mean unless it amounts to indirect control? They didn't specify what kind of control they were talking about. Does that matter? Sufficient influence is, some might think, is just another word for indirect control, right? Well, I don't think so. I think the board was trying to make a distinction there between influence and control. The point is that the contractors want to make their customers happy. And so when someone comes in and says, I'm really unhappy with how slow this is going, particularly when I look at those five workers over there. Boy, are they slow, they're dropping stuff, hitting the stop button all the time. I'm really unhappy about that. That's not what I expected under this contract. And, by the way, the contract says I have the right, I reserve the right to, to prevent anyone from working if I choose to exercise it. Is that influence? Of course, I don't want to lose this contract. They're out of here. They're out of this contract. I think they'll work on some other contract. Is that influence or is that indirect control? So I think if it's a question of the customer's or the contractor's satisfaction with the end result, with the product, then that is different. And that is not an issue of joint employer satisfaction. Is what I said satisfaction with the end result or is it with the work process? So I think if you are, if the Browning-Ferris actor in this situation is hypothetical and comes in at the end of the week or the end of the day and says, you know, I don't like what the output is now. No, they say what I said. So they say it at noon. So are they on site? Okay, yes, they're on site. I think the point here is that Browning-Ferris has this kind of continual day-to-day. I don't want to get back into this. I don't want to go on Company X. Okay. It's a haphazard I gave to you at noon by somebody on site because that's how they can see those five people are working really slowly and they're very unhappy about what they're observing. That's all they say. Extremely unhappy about this. And LeadPoint knows they've got this reserved right under the contract and LeadPoint wants to make the customer happy. So they get rid of those five people. Is that influence or is that indirect control? So they have the reserved right. So that's reserved control. That's in the other bucket list. Yeah, that's generic over everybody. I'm trying to get your understanding of the difference between influence, strongly articulated by someone who wants to keep a customer happy and indirect control. I think influence is a bigger picture. Right. Kind of bigger picture quality control, have customer happiness. Okay. So that wasn't what I was talking about in my hypothetical. So that was indirect control? Well, I think when it is more granular, when they're getting involved in the details of the work performance, then, yes, I think that counts. That is evidence of indirect control as the board would have it. Right. And we've already talked about the distinction the board makes between the end results, control over the end results, which it says is not an issue of joint employer status, and control over the means and manner of work, which the board says there can be evidence of joint employer status. So the... I just worry, I guess just to lay it on the line, my concern is particularly with the indirect control. The board here didn't come out and sort of said, we're going to consider these two things along with everything else, but didn't sort of say what role they're going to have in that analysis and didn't even apply the second part of its test, which is, fine, you may have these joint employer indicia, but are they tied to your ability to participate, or are they relevant to collective bargaining, which I assume means are you a joint employer with respect to an essential term and condition of employment? Just didn't apply that second part of its test. And by not doing so, by not saying, here's what we think they've got sufficient control over, looking at all these factors, we're going to think, well, just to get the... I just want to lay out for you my concerns so you can address it. Without having gone through that second step, without having said, we're going to consider these things, but how much weight do they carry, which the second part of their test would have required them to do, that what assurance do we have that this test, and particularly indirect control, is going to continue to fleece the line properly between genuine joint employers and stepping into the realm where they can't go of really what's an independent contract, and they're just spending an awful lot of time on things that are limited and routine policing. What assurance without that further analysis do I have? I think the board did make that further analysis. If you look at the application section of the board's decision, it went through and it highlighted what evidence it found to be probative of the joint employer question. I think it breaks it down into three categories. One specific example has to be whether there would be meaningful collective bargaining is when we were talking about, so when the board talks about the speed of the stream, of the changes they go by, which had been a source of tension with the workers in the bargaining unit, and how Brown and Ferris had sole control over productivity standards, what speed the line was going to go, and thus bargaining only with lead point. If these employees could only bargain with lead point, that issue would not be addressed. I get that they identified line speed. Talk about a few other things here and there where there was some evidence, but then they didn't know how this, how is this going to actually be relevant to the collective bargaining process? How is this going to work? Because you're now saying all we know from the board's decision is they're a joint employer, certainly when it comes to line speed. They mentioned some other things. But then they don't go on to say, but I don't understand how this joint employer status works. Once they're a joint employer, are they there to bargain on everything, or only the things that they control? Do they bargain on their own, or do they have to bargain jointly with lead point? So the board says that, in this decision, that a joint employer's bargaining obligation attaches only to those issues on which it has control. They don't have to come in and bargain about everything that goes on in the workplace. It's only those issues upon which that joint employer has control. And the board went through and indirect, and it could be exclusively indirect on exercise control. For example, a union comes in and says, these wages are too low. You go to lead point, lead point talks to us about it. They're the ones that have set the cap on it by the single Brown and Ferris employee. And you go to Brown and Ferris and they go, look, all we've done is say don't go past this person. That's all we've done. We've never exercised it. We're not doing anything else to do with wages. We've got nothing to negotiate. There's this cap here, which any routine contract can have as a cap on the price of the contract. Well, I'm not sure they haven't exercised it because there is that employee who earns more. Well, it's exercised because you've got a contract that says here's a cap on the price. But that's going to cover an awful lot of contracts. It makes a lot of people joint employers, isn't it? So the practicalities of how this is going to work when they're two or more joint employer situations. Those kind of questions will come up under any joint employer standard. Whenever there is more than one party involved in bargaining. They won't come up if it's indirect, on exercise authority. But for this new test. It doesn't mean it's wrong. I'm just saying whether it's right or wrong, the common law is something we have to address. But assuming that they're legitimate common law factors, adding them back in when they haven't been considered, at least the key decisions that the board overruled, does push the line between employment and independent contracts in a way that wasn't before. And yet the board never grappled with that because it never got to the second prong of its test. Well, there were cases prior to this 1984, or approximately 1984 shift, where the board did consider indirect factors like indirect control and reserve control. And joint employer bargaining happened under those cases. And so there is some history there. Would the board test allow evidence of just indirect and just on exercise, just indirect and on exercise control? Could that make someone a joint employer under this test? Do we know that or not? Since that's not the fact of the case, the board didn't rule definitively one way or the other. I think that it doesn't rule out that possibility. We can look at those factors, and those factors can actually be determinative, I assume. Well, as you pointed out earlier, a factor is not much of a factor if it doesn't happen in a way. So you could have that situation, but then we don't understand how the line between on exercise, indirect control will be kept from stepping on real independent contracts. I'm just not clear if the board grappled with that, partly because they just dropped the ball and didn't address the second half of their test. Well, again, respectfully, I would dispute that they did. We're really concerned about the speed here. That was not the only factor that was addressed. I mean, maybe they didn't say, we are now discussing our second prong about meaningful collective bargaining. Well, it's not just that. They didn't sort of say, I don't understand how essential terms and conditions work. You start splitting wages. You'll negotiate about part of the wage. You'll negotiate about the eviction. The second part of the test is, is this we find these sort of joint employer factors, but is assigning this joint employer label here something that's going to be consonant with sort of the collective bargaining process? Is it going to be workable under a collective bargaining process? Is it going to police the lines that we know we have to police? And it seems like it just kind of left that out there. And even, I mean, Browning-Ferris says, we're not even sure, other than speed of the line, we're not even sure after reading the decision what things we are a joint employer asked you. The fact that, you know, once every three years we told someone to go stand somewhere else, is that they don't know what they're a joint employer. The union can come and they're not sure which thing they're supposed to negotiate or not because the board didn't do the second half of its test. Well, the board sets out examples starting at page 18 of its decision. It talks about hiring, firing, and discipline, supervision, direction of work, and hours, and wages. And so this is, even though in the order itself, it doesn't say the party of Browning-Ferris shall bargain upon requests over this issue, this issue, this issue. There is information in the decision where the board talks about where it has found sufficient control by Browning-Ferris, and which has a role in bargaining. And, of course, Browning-Ferris knows what it does. It's not a mystery to Browning-Ferris the kind of arrangement it has with lead points. It is in control. It has that information. I suspect they will say that it's certainly a mystery as to which things they did that turned them into a joint employer that has to negotiate, and which things were, in their mind, just ordinary routine setting contract terms. I can't imagine that there wouldn't actually be disputes going forward about what things they have to negotiate over and don't. And, again, that is, those kind of disputes will arise under any kind of joint employer situation, and so it can't be a knock on this joint employer approach. Well, it can be when, it used to be easy, right? They're directly doing this, and so it's easier to know what they're directly controlling. But when lead points are doing stuff, but Browning-Ferris has an exercise ability to indirectly, whatever that means, influence things, then do they negotiate too? And that's the part that wasn't brought home. The prior cases, I think that's when the board was quite candid and said, look, our prior cases have dropped these factors, and that was wrong, and we're putting them back in. And so we don't have cases that show where there's this confusion or there's heavy reliance on indirect. Right. So I think it is bringing up an important point, is that one of the things the board did here was clean up its case law and said we are facing inconsistent strands of precedent. In that situation, the board did what this court tells it to do in such situations. It picks one. Before you sit down, would you agree with me that the board is of no deference from the Court of Appeals when the board's decision rests on the interpretation of the Supreme Court decision? When the board is interpreting a Supreme Court decision, does it get deference? No, I do not believe it does. And there are a lot of cases. If the Supreme Court decision is a discussion of the common law of agency and employer-employee relationship, and the board rests on its interpretation of that decision, does the board get deference then? So the deference added to a Supreme Court decision that was interpreting the common law? Yes. No, I think it's the same answer. What if it's a Court of Appeals decision interpreting the common law? Does the board get deference then? We agree that the board does not get Chevron deference as to what the common law is. There is a degree of deference as to applying the common law, but as to the pure question of what is the common law, the board does not get deference. I would point out in this case that we're not faced with a purely common law question in the joint employer determination. But the board said that... It's part of the analysis. ...a joint employer is dependent upon the common law. It said that in the opinion. Certainly. The overall standard is whether two employees share or co-determine matters governing terms and conditions of employment. Within that, part of that analysis is, is there a common law relationship? So as to that question, I agree with you. The board does not get deference. The ultimate question of whether two particular entities are joint employers, Browning-Ferris and Lee Point, is, as the Supreme Court said, an employer, a question of fact, and that's reviewed for substantial evidence. That was the answer. Okay. Thanks. Well, so let me make sure I understand what you just said. With respect to our review of whether this new test, cleaning up the board's case law, is reviewed de novo, your answer is what? The test is not reviewed de novo. The test of whether there's a joint employer that share a co-determined test is reviewed for whether... The legal question is reviewed for whether it's rational and consistent with the act, with the NLRA. The part of the test that run, you know, as one element within that test, that is a common law analysis, the board doesn't get deference on that point of the analysis. And the other point I wanted to raise, you, Judge Millet, in response to your question before, is that these are fact-intensive cases. And so what types, what particular types of indirect control will be prohibitive in the future? We will have those cases. And in this kind of... It lends itself to what the Supreme Court in Ethics calls an evolutionary approach, rather than the imposition of right-line rules. And so there will be development and there will be further guidance in cases going forward as to, excuse me, the types of evidence, indirect evidence that would contribute to a joint employer finding. Can the contract between Browning Forrest and Ferris, excuse me, and Leap Point, is terminable at will? Yes. If they're joint employers, it's still terminable at will or do they have to negotiate with the union before they could terminate the contract? So whether the... how they could... Can they terminate it at will? Or do they have to negotiate with the union before they can terminate at will? Well, if they... I think it depends on what kind of collective bargaining agreement they enter into. And whether that...  over whether they can continue to terminate the contract at will? Well, if the collective bargaining agreement provides some kind of contrary instruction, then that would be a... They don't raise it with the union. Sorry? I should say the collective bargaining agreement is silent on this question. Can they terminate it or do they have to bargain with the union because, golly gee, it sure does affect the employees and the other things in the collective bargaining agreement. Well, the board certainly noted that it was terminable at will, but it did not place much heavy emphasis on that in the...as a fact... My question is just as... There's legal rules on when companies that are... don't dispute their status as a player governed by the NLRA can just stop things without bargaining with the union, eliminate positions, things like that. So I can send back to the same question. Can they terminate at will without negotiating with the union if they are a joint employer? Well, so again, that's the kind of question that's going to come up in joint employer relationships, not particularly to this approach to the joint employer relationship. So it's... It's not a question I fully thought about, but I don't think it matters so much one way or the other as to the propriety of this test, of this approach to the joint employer docket. I know we had a lot of...or I had a lot of questions. Did you have one minute to wrap up? Sure, thank you. So just a few remaining points,  the reserved right to control, which we didn't talk about much here, is I think a pretty well-established common law principle. It shows up in the restatement. It shows up in this court's cases, both in the joint employer context, like the chemical workers case, and in the independent contractor cases, which are not really directly on point here because it's...everyone agrees that these are not independent contractors. These people in the bargaining unit are employees. And looking at Hearst, I think it's just important to see what Hearst was doing so we know what the Supreme Court was rejecting. And Hearst specifically said, we're not going to apply the common law. We're not going to look to control as the touchstone of the analysis. The board is not doing that. So what Congress rejected in Taft-Hartley is something different than what the board is doing now. And then, finally, just a few evidentiary points that I wanted to emphasize of why the board's findings are supported by substantial evidence that these two entities are. Pick your best one, because we're at the professor a minute now. Okay. And I apologize. And that is the kind of ongoing, day-to-day monitoring of lead point employees by Browning Ferris supervisors that has been transformed into action where they come into the line and instruct them both one-on-one, saying, you know, pick out that, pick out that, and stopping all production, calling all the workers in for these big group meetings, and telling them things. And Browning Ferris supervisors telling them things like what technique to use when performing their work. Thank you very much. Thank you. Good morning. My name is Craig Becker. I represent the intervener, Local 350. I'd like to take up the invitation of my friend, Mr. Dittlberg, to talk about what's really going on in this case. And I think it's responsive to Judge Millett's question is what exactly did the board rely on to find joint employment, and what does it tell us about what they'll hold in the future? Because as in all these cases, the board, in accordance with the Supreme Court instructions, looks at all the facts that suggest control. And I want to point to four of those facts or highlight four of those facts that the board found here. One, the board found that BFI not only had the authority to, but actually did directly supervise these employers any time it believed it was necessary to do so, and that it did so routinely. And I think it's important to quote what the board actually held in unchallenged findings. The board said, quote, BFI managers exercise near constant oversight of employees' work performance. Not oversight of the product at the other end of those streams, but oversight of performance. The board then held it again, I quote, or found, excuse me, and again I quote, in numerous instances, BFI managers have communicated detailed work instructions to employees on stream, held meetings with employees to address customer complaints and business objectives, and to disseminate preferred work practices and assign to employees tasks that take precedence over any work assigned to lead point. Now, this demonstrates not only actual control, but it also demonstrates what this course decision and joint council of teamsters, which is implicitly, that BFI implicitly reserves the right to supervise the details of the work whenever it's necessary. What was going on here is that you have lead point and its employees operating in a unified chain of command. And this recycling facility operated no differently than had BFI confusedly employed everyone. That is, they had a chain of command. On the conveyor belts, were they doing all this by hand or did they have some machines? Your Honor, these workers, or at least the sorters in these three categories that were at issue, were doing it by hand. There were machines they called screens that screened out certain materials, but what these people were doing was actually standing at those screens and picking out what they were supposed to pick out. So in other words, the board found that BFI managers continually exercised oversight of the employees, not the product, of the employees, and when they found it necessary to correct their work. Did they say continually? Did the board say that? The board said exactly that. It said... I'm going to go back and give you the page. The board said that... 18 or 19? Yes. Page 19, exactly. I quote, BFI managers exercised dear constant oversight of employees' work performance, not of the product, but over performance. And as I said, the board... That doesn't really support your proposition. Constant oversight means that they were out on the line looking. It doesn't mean that they were out on the line supervising. Well, what does supervision mean with this type of unskilled work? Well, that's a good question. If the BFI supervisor went up to the supervisor for LeadPoint and said, I suggest that you tell that employee over there to stop dropping all this wreckage from the ground. Is that supervision? There's two types of supervision that went on here. One, as I said, the board found that routinely there was direct supervision. Numerous examples. Here's how you pick plastic out of the stream. Here's the best technique for it. When you take your break, you first have to clean up your workstation before you go on break. Those are direct, detailed commands from BFI managers to the LeadPoint employees. Then there's indirect supervision. Who's determined when the break will occur? The break was determined by BFI. When they stopped the line, that's when employees took their break. And they also went beyond that in terms of... Is that a subject of negotiation between BFI and LeadPoint? It's not specified in the contract. No. Just an understanding. The understanding was the contract provided that LeadPoint would supply personnel to operate under BFI's instructions. So the instructions were quite detailed in that regard, and that would be the third fact that I would point to, which is the board found that BFI exercised total control over the employee's workload. The board found, and again I quote, BFI dictates the number of LeadPoint laborers to be assigned to each material stream. So they didn't say, LeadPoint, just come in and pick what we need picked out of these lines. They said, we want you to have five people here, five people there, six people there. And I'm only there, precisely there. So the board found, quote, disorders occupy set workstations along each stream, and that BFI dictates the location of those stations. So it wasn't just six on this line, it was here on this line, here on this line, and here on this line. And then the board found, and again I quote, BFI had sole authority to set the speed of the material stream. So in terms of the most basic term and condition of employment, how fast you have to work, controlled exclusively by BFI. Who controls vacation time? Vacation time was not controlled by BFI. What about seniority? We don't know if seniority was a consideration. What about maternity leave? I'm sorry, what? Maternity leave? Leave, vacation, all sorts of leave, there's no evidence that BFI controls that. Is there an Oral 1K plan that LeadPoint has? I am not certain, but there's certainly no evidence that BFI controlled it or required it. Sick leave? No evidence that BFI controlled that. So there's clearly, there's no argument that I would put before this court or that the board found, that BFI controlled all the terms and conditions of employment. But that's not what the test is. The test, as you found Judge Randolph in the Dunkin' Donuts case, and as Judge Millett found in El Safi, is control over some terms and conditions of employment. And so here you have direct supervision, you have routine indirect supervision, you have control over the most fundamental of working conditions, which is how fast do I have to work, and as my colleague has said, there was conflict about that issue. Employees were concerned that they were being required to work too fast. So if my client wants to bargain about that because it's unsafe or because it's impossible, they need to have BFI at the table. Do we know from this decision that indirect just means, I'm telling Leadpoint and they're telling you, or is indirect cover more than that? All we know is what the board held. And as in all common law adjudication, they use a term and then they apply it to the facts. So we know two things. We know what the board said it does not mean. What the board explicitly said it does not mean is what BFI says the board says it did mean. As the board says, it doesn't mean the ordinary requirements that any purchaser of goods and services applies in order to get what it's paying for. Well, I thought they said we're, as Judge Wilkins said in sort of the double negative sentence, we're not going to any more be inclined to consider things just because they are part of the limited and routine oversight. So in fact they are considering that, which I would assume would be part of indirect control. So they do consider it. Yes. I think we know that the board has said we're going to consider as relevant reserve control, indirect control, and what used to be discounted as a limited and routine control, even if it's direct. But to know what those terms mean, as always in common law adjudication, we have to see how they're applied in this case. And they were applied in this case to what many of us would think would be direct control. That is, I see someone come up in the control room, a BFI manager sees an employee who's not picking plastic appropriately, and they send a directive, an explicit directive down through the lead point supervisor on the line to correct this person's performance. Or they stop the line and allow people to take breaks. Well, I don't know what to do with line speed because on the one hand, you're the person standing there, it feels very much like a condition of your work environment. On the other hand, if someone going to do a contract says, look, I get 1,500 tons of recycling in a day, and I've got to process 1,500 tons of recycling a day on these three lines. That's what my factory has, and I can't afford to build more lines. I've got three lines, I've got 1,500 tons, I've got to come in, and I've got to go out in a 24-hour period. I'd like a contract for workers that will get that done. At that level, it feels to me like that's just the contract term, it's the output, it's the product, even though the natural consequence of that is it's going to dictate, perhaps it dictates the speed at which these folks are working. So is that routine contract product things that the board shouldn't be considering, or is that a permanent condition? I think that's actually a perfect hypothetical to illustrate what the board held here and what it didn't hold here. So any entity in BFI's position would dictate what it wants to get through the contract, which would have some influence on terms and conditions. So if they had simply said, we're going to hire you to sort recycled materials, and we're going to dump this much at the door, and we're going to expect you to sort this many tons over this period of time, according to these specifications, at the other end. That would, of course, affect working conditions. But that's very different from saying, we are going to control where you place your employees, how many employees you place on the line, and we're going to control the speed of the line, when it operates, and when it stops. So speed of the line is just the way of that's the speed it takes, in the hypothetical, that's the speed it takes to process 1,500 tons a day. That's just calculable as a matter of math. That's the speed it has to go at. And as to number of employees, what if they instead just said, here's how much we're willing to spend. And by the way, you can't pay anyone a wage higher than you're paying our one employee. And so that's for lead point, to sort out how many people are there. Would that then still be something the board considers, or at that point is that just the ordinary contract term? That, I think, the board would say is an ordinary contract. That is, all specifications of product quality, the nature of the product, how quickly it has to be produced, and what we're going to pay you to do that, obviously have some attenuated influence on working conditions and wages. But here there was much more than that. That is, they didn't hire lead point to produce a product according to a specified schedule or a set amount. They integrated lead point into their operation, maintained direct control over the employees, and direct control over the employees' work life. That is, it wasn't lead point who was deciding, because of this speed at which we have to produce this product, we want 15 people working instead of four. Or we want six people on the line instead of four. Or we want them to stand in these places. It was BFI that made all those very detailed decisions about the work life of these people sorting on the line. That's very different from saying, here's how much we'll pay you, and here's what you're supposed to do in return, and here's the timetable. Now, what exactly are the terms and conditions of employment that Browning Ferris is considered to be a joint employer based on this decision? I would answer it in two ways, Your Honor. That is, everything in the board hasn't specified here, because there hasn't been a refusal to bargain about a particular subject. There hasn't been a refusal to bargain about all subjects. But the evidence that the board relied on in finding control, I think BFI can be confident it will have to bargain about.  Now, as Mr. Heller has pointed out. What terms and conditions did the union ask to bargain about? There was simply a general refusal to bargain. The way this statute somewhat peculiarly works is in order to raise the issue which Browning Ferris wants to bring to this court, they had to engage in what's called a technical refusal to bargain, i.e. a complete refusal. But the union controlled that, right? The union must have said, hi, here we are. We'd like to negotiate with you over what? Terms and conditions of employment. That's all it said. There was a general demand, as there usually is. Then it would be up to the parties to see if they could agree about what the terms and conditions were that BFI controlled, or if they couldn't agree, then a case might have to go to the board. That's consistent with a long history of joint employment. The doctrine is not new, and the problem is not new. What if I can't read this? After reading this board's decision, I can't figure out exactly what the terms and conditions are that they're considered a joint employer for? Is that a problem? That would be unfortunate, but I think a reasonable employer could read the decision and find that. And the consequences of any confusion about that would be a refusal to bargain on a particular subject. If the union insisted on bargaining on that subject, there would be a refusal to bargain charge. The employer might be found to have refused to bargain, and the remedy would be simply bargain. So the consequences of being an employer are simply to bargain about what you control. They're not to reach agreement. They're simply to bargain. And the remedy for not doing so is, again, simply in order that you bargain. Well, it's not always simply to bargain. They might have said, no, that's not something that we're a joint employer for, and we're putting this thing in place that we have. And then the order would come from the board, and they would have to retroactively unravel and unscramble something they'd had in place for three years. So it's not always just go talk. It actually can have some real hard impacts on the employer. There is a possibility of unilateral change, but all of us who practice labor law know that that is a constant issue. Even in a bargaining relationship where there's only two parties. The parties often disagree about what the scope of the duty to bargain is. So it's not a new problem, and it's not a new problem in the joint employment context. It's an issue along the borders which always exists and can be adjudicated. Do you have a position on whether the contract can be terminated at will once they're a joint employer? I think there would be an argument, and our client might make the argument should they be found to be a joint employer, that they would have to bargain about what's essentially a decision not to terminate their employment, but necessarily, since they could be relocated to another location, but to terminate their employment or relocate them. Thank you very much. Thank you. All right. Mr. Dittlberg, we'll give you three minutes. Thank you, Your Honor. So to address the question of what the common law and Taft-Hartley require, just to reiterate, with respect to active control, it should be the center of gravity of analysis. It has been the center of gravity of analysis under the common law and under this court's cases, where it is looked most closely to what the actual practice of the relationship between the contracting parties is. With respect to this bucket of indirect control, there is no support for this concept in the common law. The board has cited to none. They cited to one Fourth Circuit case, which was not even a joint employer case. And in unpacking this concept of indirect control, we have the notion of control that is based on requiring the customer to fundamentally change its business operations, which Aurora Packing has found is not control. Some of the concepts that the panel has alluded to, you know, line speed is amount. You know, we want to buy, you know, essentially this amount of labor, which we need to efficiently run our business. That's what, you know, those kinds of factors are not what this court has found to be salient control factors. To be clear, if under the contract, a company X would say to lead point 10 times a day, hey, lead point supervisor, go tell that person to stand somewhere else. Hey, lead point supervisor, tell them to start with their left web and the right hand, because we found through studies that that's more efficient to do it that way. Hey, lead point supervisor, that person needs to be removed. They're not fast enough. Hey, lead point supervisor, they're not supposed to take a break so they clean up that area. If you have all that indirect, would you agree at least that type of indirect control can be factored in or not? I think that goes to what the court in North American Van Lines said, monitoring the ends of worker performance, you know, making sure that you get the benefit of efficient work to get the job done, you know, at the end of the day. Not the end of the day. This is throughout the day. Your position is that cannot be considered under the common law. As long as you launder it through someone you've hired, it's not relevant at all to whether they're a joint employer. There's a difference between giving, you know, direct orders and pointing things out, which is I think what your example. I'm telling them we know the contract says that we get to have input and 100% of the time when we do that, lead point executes it. That's the understanding. We get to have input to our service provider who wants to make us happy as an independent business exercising its discretion. Day-to-day movements and activities of individual workers day in and day out. Your position is no. That doesn't count. No. I mean, I think close monitoring of ends along those lines. That's not the end. That's the work. It's not the end. That's the work itself. Well, I mean, if it sees something, you know, a piece of, you know, garbage that, you know, should have been picked up that goes towards, you know, the end of efficient performance, I think they can point that out. And then we point as an independent business has to decide how it's going to respond. And in fact, you know, yes. I mean, there could be some statutory requirements. I mean, one of the other issues with the board. Garden Paris, the employer for OSHA purposes, when all this trash and stuff is on the ground, it is the premises owner. So it does have certain statutory responsibilities. I can't remember. Does OSHA use the word employer or not? I can't. I don't. But this is one of the problems with the test, you know, again, on that passage on 382 of the appendix, they say merely owning or controlling the premises. Well, you know, if that's the standard, everybody is going to be a joint employer. You know, everybody. Common law. I mean, it says where the work performed is one of its factors. Well, in the comment to 220 L, it distinguishes between following the rules of premises liability. You know, the kinds of rules that wouldn't distinguish between any visitor to the property, which is where the focus of Browning-Ferris's safety rules go to. You know, versus very specific directives to an employee. So just to be clear, section 220 of the restatement, second E. I'm not talking about an example here. Okay. One E says whether the employer or the workman there. I'm just talking about for independent contractors. Applies the instrumentality tools and place of work for the person during the work. So are you saying that the board can consider the place of the work where the work is done just as a factor or not? Kind of a common law. If you look at the commentary, there is a distinction between sort of generally applicable premises liability and premises standards. You know, the mere fact that you're on the premises and contrasting that with employment policies, you know, that do distinguish between employees and other visitors and basically anyone who has to be on the property. You know, there are OSHA and other standards that lead point as agents of a contractor just as visitors to the property would have to fall. That may just be a folder from the tort liability part of the test. Well, I mean, I care about where it happens for that in a way that we may not for this inquiry. Right. So the test is application has to be blamed of economic influence. Again, the board says that it's not applying or considering economic influence, but it plainly is. The app will contract is not controlling the employees. It's a sort of Damocles over the contractor requests, customer preferences and the like are all, you know, not those probative types of control. And again, just lastly, but you know, the range of forms of control that this court has found to be consistent. And other courts have found to be consistent with contractor relationships, customer preferences, monitoring and evaluating and statutory requirements, evaluating pre-performance qualifications and the like. I think a lot of the questions in this case can be answered by the court's existing control jurisprudence. Thank you. Thank you very much. Okay.
judges: Millett, Wilkins, Randolph